UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FIBRIX LLC,

                Plaintiff,

-v-

SCHLUMBERGER TECHNOLOGY
CORPORATION,

                Defendant.

1:22-CV-00199-JLS-MJR

REPORT and RECOMMENDATION

---

This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr. pursuant to 28 U.S.C. § 636(b)(1) for supervision of pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 6). Before the Court is Plaintiff's motion to remand the case to State court. (Dkt. No. 7). For the following reasons, it is recommended that Plaintiff's motion be denied.[1]

## BACKGROUND

Fibrix, LLC ("Plaintiff" or "Fibrix") originally brought this action in New York State Supreme Court, County of Erie. Fibrix's complaint alleges breach of contract by Schlumberger Technology Corporation ("Defendant" or "Schlumberger") in connection with a lease agreement with purchase option for two acres of real property located at 3311-3313 Walden Avenue in Depew, New York. (Compl., Dkt. No. 1-6). Schlumberger

---

[1] Although many courts have approached motions to remand as non-dispositive, the Second Circuit has held that a remand order is a dispositive decision "functionally equivalent to an order of dismissal," and thus, not within a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). See Williams v. Beemiller, Inc., 527 F.3d 259, 266 (2d Cir. 2008) ("A motion to remand is not a 'pretrial matter' under § 636(b)(1)(A), and a magistrate judge presented with such a motion should provide a report and recommendation to the district court that is subject to de novo review under Rule 72.").

is the title owner of the property. (*Id.*, ¶ 7). The property is subject to a Voluntary Cleanup Agreement ("VCA") between Schlumberger and the New York State Department of Environmental Conservation ("DEC") which imposed certain cleanup obligations on Schlumberger. (*Id.*, ¶ 8).

On August 23, 2017, Fibrix and Schlumberger entered into a written lease agreement for the property for an initial period of two years, followed by automatic renewal of the lease for additional one-month periods until terminated in accordance with its terms. (*Id.*, ¶ 10). The lease specifies that the property is being actively monitored for environmental contamination, and that Schlumberger has continuing cleanup obligations. (*Id.*, ¶ 11). The lease further provides that, once Schlumberger completes its cleanup obligations under the VCA and receives a "no further action or closure letter" concerning the property, Schlumberger shall provide a copy of such notice to Fibrix as confirmation that the cleanup has been completed. (*Id.*, ¶ 12). For the initial term and throughout any subsequent renewal term of the lease, Fibrix has the continuing option to purchase the property for nominal consider of $100. (*Id.*, ¶ 13). The lease specifically provides that Fibrix shall have the option to purchase the property at any time following Schlumberger's delivery of the VCA notice. (*Id.*, ¶ 14).

Fibrix alleges that Schlumberger received from the DEC final approval of its "Final Engineer Report" for the property on August 20, 2020. (*Id.*, ¶ 15). Fibrix further alleges that, on August 27, 2020, Schlumberger delivered written notice to Fibrix of the final approval. (*Id.*, ¶ 16). On the same date, Schlumberger advised Fibrix in writing that "we can begin tasks to transfer the property, if Fibrix is interested in purchasing the property." (*Id.*, ¶ 17). Fibrix exercised the purchase option by sending written notice to Schlumberger

2

dated August 19, 2021, together with a check for $100. (*Id.*, ¶ 18). In accordance with lease, Fibrix's election notice requested that Schlumberger provide conveyance documents, including a general warranty deed conveying fee simple title to the property to Fibrix's designated acquiring party. (*Id.*, ¶ 20). Schlumberger failed to provide the conveyance documents and failed to transfer ownership of the property. (*Id.*, ¶¶ 21-22). By letter to Fibrix dated December 13, 2021, Schlumberger claimed the election notice was not effective. (*Id.*, ¶ 23). Schlumberger also purported to terminate the lease agreement and demanded that Fibrix vacate the property. (*Id.*, ¶ 24).

Fibrix brings this action on the basis that Schlumberger was bound to transfer the property following Fibrix's exercise of the purchase option, and that Schlumberger has breached the terms of the lease by failing to do so. (*Id.*, ¶¶ 25-36). Fibrix seeks specific performance of the purchase option, money damages, and declaration of the purported termination of the lease as invalid.

On March 11, 2022, Schlumberger removed the case to federal court on the basis of diversity jurisdiction. (Dkt. No. 1). Schlumberger filed an answer to the complaint on April 1, 2022. (Dkt. No. 5). On April 11, 2022, Fibrix moved to remand the case back to New York State Supreme Court. (Dkt. No. 7). Schlumberger filed a response in opposition to the motion to remand. (Dkt. No. 9). Fibrix filed a reply. (Dkt. No. 10). The Court heard oral argument on the motion on October 24, 2022 and considered the matter submitted for report and recommendation at that time.

## DISCUSSION

"[A]ny civil action brought in a State court of which the district courts of the United State have original jurisdiction, may be removed by [...] the defendants." 28 U.S.C. § 1441(a). District courts have original jurisdiction to hear "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [ ] citizens of different States [...]." 28 U.S.C. § 1332(a). Defendant Schlumberger's Notice of Removal asserts that this Court has jurisdiction under Section 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. (Dkt. No. 1, ¶¶ 9-18). It is undisputed that Plaintiff and Defendant are citizens of different states.[2]

Plaintiff Fibrix moves to remand on the basis that Schlumberger has failed to meet its burden to prove the amount in controversy is over $75,000. Fibrix argues that the amount in controversy is limited to its $100 purchase option for the real property at 3311-3313 Walden Avenue under the terms of the lease. Schlumberger responds that the value of the property at issue is the proper measure of the amount in controversy. To that end, Schlumberger asserts that the value of this property is at least $92,000.

When a motion to remand is presented to a district court, "the party asserting jurisdiction bears the burden of proving that the case is properly in federal court." *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). When "jurisdictional facts are challenged, the party

---

[2] Plaintiff Fibrix is alleged to be a citizen of North Carolina and Delaware, as it is a limited liability company whose members are citizens of those states and Fibrix is wholly owned by Polycor Holdings Inc., a corporation organized and existing under the laws of Delaware with its principal place of business in North Carolina. (Dkt. No. 1, ¶ 13). Defendant Schlumberger is a citizen of Texas, as it is a corporation organized and existing under the law of Texas with its principal place of business in Texas. (*Id.*, ¶ 11).

asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of evidence." *Id.*, at 305. If the removing party cannot demonstrate federal jurisdiction by "competent proof," the removal was in error and the district court must remand the case to the court in which it was filed. *Hill v. Delta Int'l Mach. Corp.*, 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005). Federal courts must "construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991).

The removing party bears the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount. *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000).[3] To determine whether that burden has been met, a court must look first to the plaintiff's complaint and then to defendant's petition for removal. *Id.* "[A]s specified in [28 U.S.C.] § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Ortiz v. JCPenney*, 16-CV-569, 2016 U.S Dist. LEXIS 157926, at *21 (W.D.N.Y. Nov. 15, 2016). If the amount is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). When resolving issues surrounding subject matter

---

[3] "Although the Second Circuit has previously ruled that a defendant must show a 'reasonable probability' that the amount-in-controversy exceeds the diversity threshold . . . Congress amended the removal statute in 2011 explicitly to require a finding by a preponderance of the evidence. *See* 28 U.S.C. §1446(c)(2)(B) . . . Nomenclature aside, it is unclear that these two standards are functionally different in this context." *Farr v. Marp Ltd., LLC*, 14-CV-941, 2014 U.S. Dist. LEXIS 190581, at *3 n.4 (W.D.N.Y. Dec. 3, 2014) (citation omitted).

jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits. *Gunst v. Seaga*, 05-CV-2626, 2007 U.S. Dist. LEXIS 25257, at *6 (S.D.N.Y. Mar. 30, 2007) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

In an action seeking declaratory or injunctive relief, it is well-established that the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977), *abrogated on other grounds by United Food*, 517 U.S. at 545. In the Second Circuit, this amount is "calculated from the plaintiff's standpoint; 'the value of the suit's intended benefit' or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 48-49 (2d Cir. 1972) (citation omitted).

Where a case is instituted to resolve the parties' rights and title to real property, the amount in controversy is generally determined by the value of the realty directly affected. *Snyder v. Cooper*, 07-CV-271, 2007 U.S. Dist. LEXIS 47466, at *10 (N.D.N.Y. June 29, 2007); *see also Sheehy v. Consumer Solutions 3, LLC*, 13-CV-10637, 2013 U.S. Dist. LEXIS 57200 (D. Mass. Apr. 22, 2013) (in an action seeking to prevent defendant from delivering marketable title, "the property [] is the object of the litigation and its value is the appropriate measure of the amount in controversy"); *Correspondent Servs. Corp. v. JVW Inv., Ltd.*, 99-CV-8934, 2004 U.S. Dist. LEXIS 19341, at *24-25 (S.D.N.Y. Sept. 29, 2004) ("where a plaintiff has commenced an action to quiet title to real property, the amount in controversy is determined by the value of the realty directly affected by the contest for ownership"); *Porter v. Hollander*, 494 F. Supp. 151, 152 n.1 (D. Del. 1980) ("In

actions for specific performance of a contract to convey realty, the value of the property involved [...] determines the jurisdictional amount."). Here, the object that Fibrix alleges it has been deprived of, and which it seeks to obtain by specific performance of the contract, is the real property located at 3311-3313 Walden Avenue. Thus, the appropriate measure of the amount in controversy is the value of the property at stake, not the nominal consideration attached to the purchase option.[4]

As evidence of the value of the subject properties at 3311 and 3313 Walden Avenue, Schlumberger relies on the sworn declaration of its Real Estate Manager, Randal Vaughn, along with exhibits reflecting that the property value exceeds $75,000. (Dkt. No. 9-1). See Massaro v. Pitts, 10-CV-1911, 2011 U.S. Dist. LEXIS 132292, at *4 (E.D.N.Y. Nov. 15, 2011) ("The court may rely on affidavits and other evidence to determine the amount in controversy."). Specifically, Schlumberger submits publicly accessible records of the Erie County Department of Real Property Tax Services from year 2020 reflecting that the assessed value of 3311 Walden Avenue is $55,000 and the assessed value of 3313 Walden Avenue is $37,000, for a combined total assessed value of $92,000. (Id., pgs. 9-10). Schlumberger also submits a property valuation analysis from Fontana Wilson at Williams & Williams Real Estate Auctions, dated May 2, 2022, opining that the probable price the two parcels would bring at a property sale auction is between $135,000 and $225,000. (Id., pgs. 4-7).

Fibrix argues that Schlumberger's sources of valuation are not competent evidence, particularly in light of a contract specifying $100 as the purchase price. Fibrix

---

[4] Fibrix relies on Weichert v. Tommie, 05-CV-907, 2006 U.S. Dist. LEXIS 92759 (N.D.N.Y. Dec. 21, 2006) to argue that the "value of contract," here $100, is equivalent to the amount in controversy for jurisdictional purposes. However, in Weichert, the contractual amount related to construction and installation services, not to the transfer of real property. The holding is therefore inapposite here.

7

submits first that the valuation and tax assessment documents relied on by Schlumberger are inadmissible hearsay evidence. To the contrary, the Erie County Real Property Tax Services records are evidence that would be admissible at trial under the public record exception to the hearsay rule. Fed. R. Evid. 803(8); see Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 542 (4th Cir. 2007) (county tax assessment offered to prove the value of real property "could appropriately have been admitted under the agency records exception to the hearsay rule, which holds such documents sufficiently reliable because they represent the outcome of a governmental process and were relied upon for non-judicial purposes"); see also Kuba v. Sea World, Inc., 428 Fed. Appx. 728, 732 (9th Cir. 2011) (finding that evidence submitted along with live hyperlinks to a municipal website were self-authenticating under Federal Rule of Evidence 902(5)). The affidavit of Randal Vaughn, which also offers the Williams & Williams valuation, further supports the accuracy of these assessment figures. Such a declaration may be accepted as competent evidence of the amount in controversy. See Egleston v. Valspar Corp., 15-CV-4130, 2015 U.S. Dist. LEXIS 146284, at *10 (S.D.N.Y. Oct. 13, 2015) (relying on defendant's declaration presenting evidence of sales figures to demonstrate that the amount in controversy met jurisdictional threshold).

  Next, Fibrix argues that the Williams & Williams valuation disclaims that it is "not an appraisal" and does not account for deed restrictions which are relevant to the value of the property on the open market. To support this, Fibrix submits a New York State DEC-approved "Site Management Plan" which imposes restrictions on the development of the property due to environmental contamination. (Dkt. No. 10-2). Fibrix maintains that the lease agreement, which explicitly recites these restrictive covenants, reflects a more

accurate purchase price. Indeed, the agreed-upon sale price for an asset can be admissible evidence of value against a party to the contract. *See Schonfeld v. Hilliard*, 218 F.3d 164, 179 (2d Cir. 2000) ("it is well-established that a recent sale price for the subject asset, negotiated by parties at arm's length, is the best evidence of its market value"). Fibrix also argues that past sales history for this property reflects low sale or transfer prices due to chemical contamination. However, beyond reference to the contract price, Fibrix has failed to offer any evidence of the accurate value of the property to rebut the estimates offered by Schlumberger. The inaccuracy of the $100 amount is made clear by the fact that the lease agreement was negotiated to include rent payable by lessee, Fibrix, in the form of "general maintenance and upkeep" of the premises, as well as other terms. The option to purchase the leased property, and the nominal consideration attached to that purchase option, cannot be divorced from the larger lease agreement, and does not provide definitive evidence of the property's value under these circumstances. This is particularly true in light of Schlumberger's evidence showing a value for the real property greatly exceeding the purchase option price. Although deed restrictions imposed on the property are certainly relevant to its market value, Fibrix has not shown that such restrictions would decrease the value, and thus the amount in controversy, below the minimum requirement for diversity jurisdiction.

Accordingly, the Court concludes that Schlumberger has established, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 in satisfaction of the requirements of federal diversity jurisdiction.

## **CONCLUSION**

For the foregoing reasons, it is recommended that Plaintiff's motion to remand (Dkt. No. 7) be denied, and the District Court retain jurisdiction over the matter.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated:   November 1, 2022
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge